*From the Desk of*
*Joan M. Wilson*
*14300 Cody Circle*
*Anchorage, Alaska 99516*
*(907) 242-4428*

**TRANSMITTED VIA EMAIL TO BOARD MEMBERS AND HAND DELIVERY TO THE CONSORTIUM**

May 20, 2016

The Alaska Native Tribal Consortium Board of Directors
Alaska Native Tribal Health Consortium
4000 Ambassador Drive
Anchorage, Alaska 99508

Re: Retaliatory Discharge -- Chief Ethics and Compliance Officer

Dear Honorable Members of the Board of Directors:

Please consider this appeal to my recent wrongful termination as Chief Ethics and Compliance Officer of the Alaska Native Tribal Health Consortium (ANTHC or Consortium). My termination was in retaliation for my engagement in legally and ethically protected activities in the performance of my duties. It is my sincere desire that the Consortium recognize this wrong and take immediate actions to mitigate damages, not only to me, but to the organization that results from the termination of anyone in retaliation for complying with the legal and ethical obligations of their job.

As you know, in compliance with the Alaska Native Tribal Health Consortium (ANTHC) Human Resources Policy 709, Section 4, the Health Care Compliance Association (HCCA) Code of Ethics, Section R1.4 and the Society of Corporate Compliance and Ethics (SCCE) Code of Ethics, Section R1.4, my position has special requirements and expectations. Specifically,

> *"If, in the course of their work, HCCPs [Health Care Compliance Professionals] become aware of any decision by their employing organization which, if implemented, would constitute misconduct, adversely affect the health of patients, residents, or clients, or defraud the system, the professional shall: (a) refuse to consent to the decision; (b) escalate to the highest governing authority, as appropriate; (c) if serious issues remain unresolved after exercising "a" and "b", consider*

> *resignation [or challenge to wrongful termination]; and (d) report the decision to public officials when required by law;*"[1]

By reporting to this Board and refusing participation in wrongdoing, I am exercising options (a), (b), and (c).

    I have served as ANTHC's Chief Ethics and Compliance Officer with distinction since September 8, 2014. As required by ANTHC's job description for this position, I am tasked with providing oversight and direction to the Consortium and implementing an effective ethics and compliance program. I am further obligated to provide ongoing leadership, advice, consultation, and guidance on ethical and compliance issues. As recently as April 13, 2016 and April 22, 2016, the Chief Executive Officer commended my excellent performance and contributions to the Consortium, as well as gave me a salary increase.[2] On April 22, 2016, when discussing a difficult compliance, ethics, and operational issue with the CEO, the CEO verbally confirmed his commitment to my

---

[1] *See also* Commentary:

> The duty of a compliance professional goes beyond other professionals in an organizational context, inasmuch as his/her duty to the public includes prevention of organizational misconduct. The compliance professional should exhaust all internal means available to deter his/her employing organization, its employees, and agents from engaging in misconduct. HCCPs should consider resignation only as a last resort, because compliance professionals may be the only remaining barrier to misconduct. *In the event that resignation becomes necessary, however, the duty to the public takes priority over any duty of confidentiality to the employing organization. A letter of resignation [or, in the case, appeal of wrongful termination] should set forth to senior management and the highest governing body of the employing organization the precise conditions that necessitate his/her action.* In complex organizations, the highest governing body may be the highest governing body of a parent corporation.

Emphasis added.

[2] The letter dated April 13th for a salary increase effective March 20, 2016, stated in pertinent part:

> *Dear Joan,*
>
> *We appreciate your dedication to our vision that Alaska Native people are the healthiest people in the world. Your efforts each day move us toward our goal. Thank you for this commitment to our people and our organization....*
>
> *Sincerely,*
> *Roald Helgesen*
> *Chief Executive Officer*

serving the organization and stated that the Consortium would not entertain any idea of me leaving it. Yet, on May 6, 2016, less than ten business days later, that same individual terminated my employment.

The uncontroverted evidence will show I was wrongfully terminated for voicing my objection to exclusion from a Medicaid reform and expansion meeting to discuss billing plans for a third-party payer. I should have been included in that meeting, per my job description and legal and ethical obligations, to prevent and detect all potential criminal conduct relevant to the billing of this third-party payer. (Based on past practice, of which I made the CEO aware, ANTHC struggled with appropriate and lawful billing practices, and was slow to correct any deficiencies, and was equally slow, in violation of recent Office of Inspector General Guidance, to identify and return overpayments.)

Secondly, I was inappropriately called to task by the General Counsel's Office when I objected to its attempt to retroactively designate an external information security risk assessment as a legally privileged review, which would shield the document from scrutiny outside the legal department and, if subpoenaed, by the Office for Civil Rights (which enforces HIPAA compliance). The external information security risk assessment showed significant and critical risks to the security of protected health information maintained by the Consortium and its tribal partners. Executive management appeared more inclined to challenge and protect the report than implement its many called for critical corrective actions. I notified the CEO and General Counsel's Office of each of these concerns respectively on May 2, 2016, May 3, 2016, and May 5, 2016. I sought further assistance from the General Counsel's Office to resolve these matters on May 3, 2016.[3] That request was ignored.

---

[3] My email to General Counsel stated:

*Nacole, can you help me understand why Roald does not want Ethics and Compliance observing even a small portion of this week's meeting with the State? Roald presents that I am not a member of the negotiating team, and that is true. But I do believe it is appropriate for Ethics and Compliance to observe the tenor of the meeting and gage how proper billing may be a factor in the future. I also think it sends a potentially bad message to the State to have the financial team attend, but not the Division responsible for ensuring compliance.*

*I write now after reviewing the external [security] risk assessment, which tells me we often don't think fully of compliance at the time of expansion and we spend way too much time correcting what should not have been a problem in the first place.*

*Anyway, I appreciate your thoughts. I will obey the directive that I not attend unless summoned, but it weakens my belief in this organization, and that is sad, because I really love it and its mission.*

*Thanks,*
*Joan M. Wilson, JD*
*Chief Ethics and Compliance Officer*

My employment was terminated less than seventy-two hours later.

There can be no dispute that my reported activities are protected under federal law[4] and state law,[5] as well as under the ANTHC Code of Conduct and the anti-retaliation and good-faith reporting policies adopted and approved by this Board.[6] Termination of my employment for engaging in these protected activities is, without dispute, retaliatory and will subject ANTHC to significant damages,

---

[4] *See* the Patient Protection and Affordable Care Act of 2010 (ACA), Section 1558:

> (a) PROHIBITION. No employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee (or an individual acting at the request of the employee) has
> (1) received a credit under section 36B of the Internal Revenue Code of 1986 or a subsidy under section 1402 of this Act;
> (2) provided, caused to be provided, or is about to provide or cause to be provided to the employer, the Federal Government, or the attorney general of a State information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of, any provision of this title (or an amendment made by this title);
> (3) testified or is about to testify in a proceeding concerning such violation;
> (4) assisted or participated, or is about to assist or participate, in such a proceeding; or
> (5) objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this title (or amendment), or any order, rule, regulation, standard, or ban under this title (or amendment).

*See also* 45 C.F.R. §160.316 (HIPAA):

> A covered entity or business associate may not threaten, intimidate, coerce, harass, discriminate against, or take any other retaliatory action against any individual or other person for—
> (a) Filing of a complaint under §160.306;
> (b) Testifying, assisting, or participating in an investigation, compliance review, proceeding, or hearing under this part; or
> (c) Opposing any act or practice made unlawful by this subchapter, provided the individual or person has a good faith belief that the practice opposed is unlawful, and the manner of opposition is reasonable and does not involve a disclosure of protected health information in violation of subpart E of part 164 of this subchapter.

*See generally* required fraud, waste, abuse, and mismanagement reporting to Indian Health Services via the Department of Health and Human Services Office of Inspector General. https://www.ihs.gov/ReportFraud

[5] *French v. Jadon, Inc.*, 911 P.2d 20, 24 (Alaska 1996); *Luedtke v. Nabors Alaska Drilling, Inc. (Luedtke I)*, 768 P.2d 1123, 1130 (Alaska 1989); *Luedtke v Nabors Alaska Drilling, Inc. (Luedtke II)*, 834 P.2d 1220, 1224 (Alaska 1992); *Rutledge v. Alyeska Pipeline Serv. Co.*, 727 P.2d 1050 (Alaska 1986)

[6] ANTHC Code of Conduct (2009); ANTHC Board of Directors Policy 1200 – Good Faith Reporting and Chain of Command Policy; ANTHC Board of Directors Policy – Compliance Awareness and Reporting. These policies form the terms of employment and violation of them further supports a cause of action for breach of contract.

including under applicable provisions of the False Claims Act,[7] if not immediately rectified.

   In summary, I request that you reinstate my employment so I can return to work immediately and resolve the many compliance concerns I have attempted to bring forward.[8] Should the Board choose otherwise, I will pursue all remedies under the law and through all means possible to reclaim my position and prevent further public wrongdoing, harm to the Consortium, and harm to the Alaska Native people I have been humbled and privileged to serve.

              Respectfully yours,

              *Joan M. Wilson, Esq.*
              Joan M. Wilson, Esq.

cc:  ANTHC General Counsel
    ANTHC Senior Human Resources Director

---

[7] 31 U.S.C. §3730(h). Under the anti-retaliation section of the False Claims Act, any employee who is discharged, demoted, harassed, or otherwise discriminated against because of lawful acts by the employee in furtherance of a protected action, including investigation for a claim, is entitled to all relief necessary to make the employee whole, including reinstatement, double back pay, and compensation for any special damages, including litigation costs and reasonable attorneys' fees. *Id.*

[8] I seek expedited consideration and review of this appeal no later than June 3, 2016. Supplemental briefing in support of this appeal will be provided in advance of the June 1st Board meeting. As described in that briefing, conflicts of interest will prevent the Chair, CEO, General Counsel, Senior Counsel Pete Petersen, Senior Counsel and Interim Chief Ethics and Compliance Officer Kyan Olanna, and Senior Human Resources Director Memry Dahl from deliberations and advising the Board on this appeal.