*From the Desk of*
*Joan M. Wilson*
*14300 Cody Circle*
*Anchorage, Alaska 99516*
*(907) 242-4428*

**TRANSMITTED VIA EMAIL**

May 31, 2016

Richard Monkman
Sonosky Chambers Sachse Miller & Munson LLP
302 Gold Street, Suite 201
Juneau, Alaska 99801

Re: Retaliatory Discharge – Supplemental Information

Dear Dick,

It would be an exaggeration to say it was a pleasure meeting with you for coffee today, but you remain an individual I hold in high regard. Therefore, seeing you remains a privilege, and I welcome your and ANTHC's invitation for an initial discussion. Please share this letter with the Board.

I take it from our conversation you will be relaying the facts that I believe support my claim retaliatory discharge claim directly to the Alaska Native Tribal Health Consortium Board of Directors. Unless I misunderstood, I also believe from our conversation that contrary to governing law the Board is unlikely to reverse course and grant my request for reinstatement. Therefore, I find it difficult to even present additional evidence that will show my discharge is retaliation for reporting compliance concerns and that any alleged evidence contrary to this position is mere pretext.

In case I am mistaken, I do give you full permission to share my statements to you directly with them. You have the full substance of my concerns regarding actions taken against me since April 22, 2016.[1] You also know that the Consortium cannot state a pattern of evidence or concerns against me when they had many opportunities over the course of my employment to offer them in a timely manner. Again, my requests for an evaluation were refused, contrary to ANTHC policy. Again, my recent salary increase per

---

[1] Any reinstatement offered would need to be provided in a manner that I am protected from further retaliation.

ANTHC policy evidences that I was meeting all expectations of my employment. Any after-the-fact attempt to argue otherwise is mere pretext that will hold no sway with impartial decision makers.

Let me also add that if the Board wants to hear directly from me, I will keep my schedule completely open to them tomorrow. It remains my preference to meet and speak with them and I continue to hope the majority of its members choose this course.

All this said, I do believe I owe the Consortium a statement that explains why Mr. Teuber, Mr. Helgesen, Ms. Heslep, Ms. Olanna, Ms. Dahl and Mr. Petersen are conflicted out from chairing, deliberating and/or advising the Board in any capacity on the termination of my employment. I also believe it is important to reiterate to the Board that my termination is the last in a long series of actions that prevents the Ethics and Compliance Services of the Consortium from serving the role an effective compliance department is intended under the Federal Sentencing Guidelines to provide. The Board should be made fully aware of this consequence. Last, I will summarize the ANTHC policies and procedures that are violated by my termination. I will leave the discussion of applicable federal and state law to another legal forum should the need arise. Please know that while I believe my termination was retaliatory for engaging in protected legal activities, sex and/or age discrimination may also have been factors in my wrongful termination. Facts pertinent to these concerns are described below.

**A.    Conflicts of Interest**

**1.    Mr. Teuber:**  Pursuant to ANTHC Board of Directors Code of Conduct Purpose (1) and Section A, ANTHC Code of Conduct Section E, and ANTHC Human Resources Policy HR-702, the President (as employee) and Chair (as Board Member) has a direct conflict and should withdraw himself from any consideration of this appeal. Based upon my experience in working directly with the CEO, I am aware that the CEO seeks the counsel and/or approval of every major decision impacting the Consortium prior to undertaking that action. This includes the decision not to renew the Chief Medical Officer's contract; the hiring of the Interim Vice President of Ancillary Clinics absent a listed position or required recruitment; the decision to place Dr. Stewart Ferguson on the Alaska Electronic Health Information Network Board instead of current Chief Information Officer Mary Ford who requested the appointment in light of her responsibility for the Alaska eHealth Network (AeHN) and telehealth projects; and the decision to discipline and create a hostile work environment for Manon Demientieff, in such a manner that she considered her decision to leave the organization constructive discharge. I will add to this list what I believe I heard from you today, which is that the Chair has already endorsed my termination and any chance of reinstatement is highly unlikely.

I also believe the President will not handle my appeal fairly because he is well aware of my voiced opposition before the Consortium Executive Team and with the General Counsel to approve a first class travel policy to permit after-the-fact what has largely been the President's First Class Travel, in violation of current ANTHC policy.

This in my estimation is a waste of Consortium resources. In addition, no person should be singled out for better treatment based on his or her status within the organization.

Last, in my one interaction with the President when I brought a code of conduct concern about the CEO to the President for his attention, his response was ineffective and incomplete. The CEO has yet to be disciplined for his action.[2] Nor has the employee who brought the concern been given any significant response or remediation for her substantiated concerns of workplace bullying and potential sex discrimination. [3]

For all these reasons, the Chairman of the Board should recuse himself from chairing, deliberation, and decision on my termination. Should he refuse to do so, the Board should conclude he has a conflict. In the end, Chair Teuber's participation will taint the appeal process (so much apparently, that it is already decided I will not be reinstated) and amount to a waste of Consortium time and resources.

**2.      Mr. Helgesen, Ms. Heslep, Ms, Dahl, Ms. Olanna, Mr. Petersen**: In a similar vein and as guided by ANTHC Code of Conduct Section E ANTHC Human Resources Policy 702, the Chief Executive Officer, General Counsel, Senior Human Resources Director, Senior Counsel (Pete Petersen), and Interim Chief Ethics and Compliance Officer and former Senior Counsel (Kyan Olanna) shall declare their actual and apparent conflict of interest and impropriety and play no role in advising the Board on this matter. Each individual is a fact witness to specific conduct that was factors in my wrongful termination, has already engaged in an incomplete investigation of the factors, or has wrongly advised the CEO that his actions were permissible. Ms. Heslep is also aware of unresolved concerns that Mr. Helgesen has bullied and sexually discriminated

---

[2]      As we discussed, I so believed that the Chair would not provide meaningful resolution to the employee that I sought advice from Bar Counsel as to next best step. I reconsidered any alternative approach and reported directly and timely to the Chair. His remedy was nonexistent, and he treated my request for an additional investigation through external counsel as unnecessary and as nothing more than a cause of embarrassment for the CEO.

[3] 

against other female employees in the workplace and, under guidance of the Chair, has yet to resolve these concerns in any meaningful fashion. Even if these individuals were to attempt to advise the Board at this late date, self-interest will likely prevent them from providing the independent guidance and assistance this Board deserves and requires.

**B.      The Long-Term History of Ethics and Compliance Services and the Effect of My Termination on its Required Effectiveness**

I have served as ANTHC's Chief Ethics and Compliance Officer with distinction since September 8, 2014. As required by ANTHC's job description for this position, I was tasked with providing oversight and direction to the Consortium and implementing an effective ethics and compliance program. I was further obligated to provide ongoing leadership, advice, consultation, and guidance on ethical and compliance issues. This is not a position that requires silence in the face of wrongdoing or even potential wrongdoing. As both the Health Care Compliance Association Code of Conduct and the Society of Corporate Compliance and Ethics Code of Ethics Commentaries state compliance professionals are often the remaining barriers to misconduct within organizations. They must be free to bring concerns forward in good faith without fear of retaliation. Tribal affiliation or lack thereof for the affected organization in no way minimizes this requirement.

An effective Chief Ethics and Compliance Officer is further called upon by her job description to be the voice for compliance when others seek expansion and or a greater allocation of federal or state resources. It is a difficult position for any individual to hold, but one that must be held by a person of conviction and good conscience. ANTHC achieved that when it hired me. Because it has now elected to terminate me in violation of law and ANTHC policy for merely doing my job, I have no choice but to conclude that ANTHC's Ethics and Compliance Division has no ability to serve the functions an effective corporate compliance division is required to serve under both the Federal Sentencing Guidelines and the Affordable Care Act.

ECS cannot "exercise due diligence to prevent and detect criminal conduct,"[4] when doors as important as a summit that addresses ANTHC's largest government payer are closed to it. It cannot "promote an organizational culture that encourages ethical conduct and a commitment to compliance with the law"[5] when the CEO, completely untrained in the requirements of the law, prevents it from serving this very function. Moreover, it cannot rely on the conscience of the CEO, when his repeatedly stated goals are expansion on such a time schedule that compliance with the law becomes essentially an impossibility.

It is equally clear that under the current administration this Board will not be kept knowledgeable of the content and operation of the compliance and ethics program, because the CEO currently controls all messaging. Even my ability to reach out to the Ethics, Compliance, Quality, and Safety Committee, once permitted under ANTHC

---

[4]     Federal Sentencing Guidelines §8B2.1 (a)(1).
[5]     Federal Sentencing Guidelines §8B2.1 (a)(2).

Board policies, is now prohibited by Board policy, this a decision of both the Chair and General Counsel made without absent any consultation with the Ethics and Compliance Division.

If this Board were to elect not to reinstate me, it is equally electing to keep ECS subservient to the General Counsel's Office and without any ability to serve the roles it is required by federal law to serve.

The Board should consider that since ANTHC's creation under federal statute twenty years ago, the Consortium has terminated two Chief Ethics Officers, myself included.[6] A third one chose to resign believing leadership under another CEO would compromise the program's effectiveness. Every other interim between these professionals, with the exception of Deb McCarthy, has had no experience in health care compliance and provided no key leadership and clear voice for compliance.

Although lauded as an entity separate from the General Counsel's Office, ECS remains secondary and subservient to it. Significant matters ECS has forwarded to the General Counsel's Office for review -- on investigations, significant Medicaid, Medicare, and private insurance billing matters, policies, and protections for the privacy and security of protected health information, to name but a few -- remain "under advisement," some for as long as at least three years. The CEO has not intervened despite my requests for him to do so. Therefore, I do not find it surprising that after building nearly two years of credibility with this Board, I was purposefully terminated before I could bring any of these matters to your attention directly.

I am embarrassed at the current state of ECS, including that it has taken me so long -- despite monumental efforts -- to navigate this complex organization and move forward with reform. I am more stricken by the decision to again cripple ECS and, in this case, put it directly under the General Counsel's control, than I am by the personal affront of my termination to me. This Board should be deeply suspect of the CEO's decision to appoint Senior Counsel, a close ally and recent hire of the General Counsel, as Interim Chief Ethics and Compliance Officer. Beyond employment law, she has no experience on the many subject matters a Compliance Department must vigilantly address.

All these are reasons why I further believe that my agreeing to a severance payment in exchange for confidentiality and non-disclosure will not serve the compliance needs I was hired to redress. Nor will it serve the Alaska Native people or the mission and vision of the Consortium in the long run.[7]

---

[6] In 2011 (I believe) and while in private practice, I conducted the exit interview of the prior Chief Ethics and Compliance Officer. She reported concerning conduct regarding the CEO's bullying and aggressive behavior that I could not substantiate at the time. Now, I can.

[7] I do not believe my status as a non Alaska Native beneficiary prevents me from continuing to act in the long terms interests of the Consortium and the people it serves. As I stated to you, I have spent at least ten years representing the Consortium in some capacity or serving in the non-legal counsel position of Chief Ethics and Compliance Officer. I believe fully in ANTHC's mission and its desire and operational need to maximize available resources, but I also believe in honesty in deeds and complying with the rules

C. **Violated ANTHC Policies**

Again, it seems a waste of my time and resources to make a case for reinstatement after my understanding of our conversation today. Nevertheless, here are the policies are procedures that were violated when the CEO wrongfully terminated my employment or the Consortium wrongfully failed to prevent or reverse his actions.

1. ANTHC Code of Conduct.

    C.1 – The CEO evidenced an aberrant disregard of ANTHC's commitment to conduct ANTHC activities in an honest, ethical, and professional manner.

    C.3 – By my termination for merely doing my job, the CEO engaged in unethical and illegal behavior.

    H.1 – The CEO did not maintain a work environment that respected the rights and dignity of fellow employees.

    H.3 – The CEO engaged in threatening and abusive behavior, sexual, and other forms of harassment and discrimination (sex and age).

    H.5 – The CEO, General Counsel, and Senior Human Resources Director did not provide communication channels and dispute resolution programs that allow employees to address concerns about compliance or ethical questions and concerns, and behavior standards without fear of retaliation – In fact, the CEO retaliated for me taking such action by terminating my employment.

    H.9 – The CEO, General Counsel, and Senior Human Resources Director did not create a work environment in which compliance or ethical concerns can be raised and no chain of command or other alternative has been made available for redress.

2. ANTHC Board of Directors Policy 1200 – Good Faith Reporting and Chain of Command Policy

    Abrogation of Purpose: By my termination, ANTHC failed to provide an environment that permitted the good faith reporting of safety, quality, ethical and compliance concerns.

---

that continue to apply to the Consortium by its own voluntary actions of billing third party payers, entering into grants, and maintaining an electronic health record system. Nor does my commitment to these measures end with my termination. Even a health care compliance professional that has resigned and no longer holds an employment relationship with a health care entity is required by professional code to report suspected illegal activity to governing authorities. Asking me to do anything less is a misunderstanding of the character of the person ANTHC hired to prevent and detect potential criminal conduct. I can only think people forgot I was a former criminal prosecutor and that I have defended health care providers accused of Medicaid fraud and that this is no easy walk.

> Policy 1: ANTHC wrongly terminated my employment for engaging the prompt reporting of safety, quality, ethical and compliance concerns to the CEO, General Counsel, and Senior Counsel that this policy requires.
>
> Policy 2: ANTHC wrongly terminated my employment even though I appropriately followed chain of command to report ethics and compliance concerns. ANTHC wrongly permitted the individual against whom the ethics and compliance concerns were brought to terminate my employment. ANTHC created an environment of fear and reprisal, as apparent by my termination and the lack of employment action against any other individuals.
>
> Policy 3: In violation of policy, ANTHC retaliated against me for making a good faith report of an ethical, compliance, safety, and quality concern. All such good faith reports are required by this section to be protected and not subject to discipline or sanction of any kind. Based upon a record of meets-all-expectations, if not excellent service, no other action warranted termination or progressive discipline of any kind.

3. ANTHC Board Policy – Compliance Awareness and Reporting

   > Abrogation of Purpose: ANTHC failed to achieve the purpose of this policy by terminating my employment for promptly reporting compliance and ethical concerns.
   >
   > Policy 1: By my termination, ANTHC evidences that it does not promote a culture of ethics and compliance. Rather, it terminates employees for reporting ethical and compliance concerns.
   >
   > Policy 3: By exclusion from the State Medicaid Summit, ANTHC prevented its Chief Ethics and Compliance Officer from working on behalf of the Consortium to exercise due diligence in the prevention, detection, and correction of potential compliance issues. Moreover, my prompt, candid, and required report to the CEO of the compliance concerns that were occurring because of my exclusion, is evidence that I was terminated for undertaking actions required by this policy and my job description.
   >
   > Policy 4. By terminating my employment, ANTHC retaliating against me for making a good faith and required ethics and compliance concern.

4. ANTHC Human Resources Policy 710 – Harassment and Discrimination

   > Abrogation of Purpose: ANTHC failed to achieve the purpose of the policy by failing to provide a work environment free from improper discrimination and conduct that is harassing and coercive.

Policy: Through the CEO's conduct and wrongful termination, ANTHC has discriminated against me based on my sex and age. Similarly situated women and employees within a protected age class are regularly subjected to the harassing, bullying, and unethical and unfair treatment of the CEO.

By disciplining me and not the CEO and Senior Counsel ANTHC has deprived me of employment and advancement based on my sex and age.

Despite request, ANTHC's General Counsel and Senior Human Resources Director failed to provide an opportunity for a complaint of a discriminatory workplace to be heard and terminated the employee before the complaint could be made.

ANTHC's CEO, General Counsel, and Senior Human Resources Director made the retaliatory prohibition of this section a farce by preventing and ignoring the employee's request for assistance in filing a good faith report
by my termination and the harassing treatment of other similarly situated women and older employees.

5. ANTHC Human Resources Policy 710-1 Instructions -- Harassment

   Abrogation of Purpose: ANTHC failed to achieve the purpose of the policy by failing to provide a work environment free from all forms of discrimination, including sex and age, and conduct that is harassing and coercive.

   Section 4 -- Despite request, ANTHC's General Counsel and Senior Human Resources Director failed to provide an opportunity for a complaint of a discriminatory workplace to be heard and terminated the employee before the complaint could be made.

   Section 8 – ANTHC's CEO, General Counsel, and Senior Human Resources Director made the retaliatory prohibition of this section a farce by preventing and ignoring the employee's request for assistance in filing a good faith report.

6. ANTHC Human Resources Policy 703 – Sexual Harassment Policy

   Abrogation of Purpose: ANTHC failed to provide a workplace free from sexual discrimination and other gender based conduct that is harassing or disruptive.

7. ANTHC Human Resources Policy 703 Instruction – Sexual Harassment

   Abrogation of Purpose: ANTHC failed to provide a workplace free from sexual discrimination and other gender based conduct that is harassing or disruptive.

**D.     Conclusion**

Thank you for your time today. I will keep my schedule open for the Board tomorrow. Please pass along my request that they agree to hear from me.

If I hear nothing from you or the Board by close of business on June 3, 2016, I will consider my request for reinstatement, in a way that I am protected from further retaliation, as denied. I do promise you my next course of action will be made in good conscience, after thoughtful deliberation, and with the health and well being of the Alaska Native people I have been privileged to serve in the forefront of my concerns.

Respectfully yours,

*/s/ Joan M. Wilson*

Joan M. Wilson, Esq.