IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOAN WILSON and PAUL FRANKE, M.D.,<br><br>                              Plaintiffs,<br><br>v.<br><br>ALASKA NATIVE TRIBAL HEALTH CONSORTIUM; ANDREW TEUBER; and ROALD HELGESEN,<br><br>                              Defendants. | Case No. 3:16-cv-00195-TMB<br><br>ORDER ON MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM (DKT #50), CROSS MOTION FOR JURISDICTIONAL DISCOVERY (DKT #74) AND MOTION TO DISQUALIFY (DKT #32) |

## I.   INTRODUCTION

The matter comes before this Court on Defendants Alaska Native Tribal Health Consortium's ("ANTHC"), Andrew Teuber's ("Teuber") and Roald Helgesen's ("Helgesen") (collectively "Individual Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss").[1] Plaintiffs Joan Wilson ("Wilson") and Dr. Paul Franke ("Franke") opposed the Motion to Dismiss and cross-moved for Jurisdictional Discovery ("Discovery Motion").[2] This matter was fully briefed by the parties, and this Court heard oral argument on the Motion to Dismiss and Discovery Motion on June 12, 2019.[3] Also pending before the Court is Defendants' Motion to Disqualify Counsel and Plaintiffs ("Motion to Disqualify"),[4] which is fully briefed and ripe for adjudication. The Parties did not seek oral argument with respect to the Motion to Disqualify, and this Court does not find it necessary

---

[1] Dkt. 50 (Mot. to Dismiss).

[2] Dkt. 73 (Opp'n to Mot. to Dismiss); Dkt. 74 (Disc. Mot.).

[3] Dkt. 86 (Oral Argument Min. Entry).

[4] Dkt. 32 (Mot. to Disqualify).

to its analysis. For the reasons explained below, Defendants' Motion to Dismiss at Docket 50 is **GRANTED**, Plaintiffs' Cross-motion for Jurisdictional Discovery at Docket 74 is **DENIED**, and Defendants' Motion to Disqualify at Docket 32 is **DENIED AS MOOT**.

## II.    BACKGROUND

*A.  Factual Background*

ANTHC is a "Tribal Organization and inter-Tribal consortium of federally recognized Alaska Tribes and Tribal Organizations"[5] which co-manages Alaska Native Medical Center ("ANMC"), a tertiary-care hospital that provides medical services in Anchorage, Alaska.[6]

From 2014 to 2016, ANTHC employed Wilson as Chief Ethics and Compliance Officer.[7] From 2013 to 2016, ANTHC employed Franke by contract as the Chief Medical Officer of ANMC.[8] Wilson and Franke assert that they have "intimate knowledge of the day-to-day operations" of ANTHC, including billing practices of ANMC.[9] They repeatedly allege that Teuber, President of ANTHC,[10] and Helgesen, Chief Executive Officer of ANTHC and Hospital Administrator of ANMC,[11] were "well-aware" that ANMC and ANTHC's various billing practices were fraudulent.[12] Specifically, Plaintiffs allege that ANTHC engaged in the following fraudulent

---

[5] Dkt. 49 (Second Am. Compl.) at 3, ¶ 5.

[6] Dkt. 52 (Helgesen Aff.) at 3, ¶ 5.

[7] Dkt. 49 at 2, ¶ 3.

[8] *Id.* at 2, ¶ 4.

[9] *Id.* at 2–3, ¶¶ 3–4.

[10] *Id.* at 3, ¶ 7.

[11] *Id.* at 3, ¶ 6.

[12] *See* Dkt. 49 at 8 –15.

practices: double billing for certain medical services;[13] billing for services performed by ineligible providers;[14] billing for unauthenticated services;[15] and accepting incentive payments from Medicaid and Medicare without satisfying program requirements.[16] Plaintiffs allege that Wilson "repeatedly brought these issues to the attention of ANTHC and Helgesen," "repeatedly attempted to reverse these [inappropriate] practices"[17] and "urged ANTHC to return, report and repay overpayments that ANTHC wrongfully obtained"[18] without success. Plaintiffs also allege that Helgesen and Teuber took "no action to stop [these inappropriate billing practices]"[19] and even "buried Ms. Wilson's draft compliance plan designed to remedy billing concerns."[20]

On May 6, 2016, Helgesen terminated Wilson's employment with approval from Teuber, his direct supervisor.[21] In June 2016, ANTHC notified Franke that his contract, which was due to expire on June 7, 2016, would not be renewed.[22]

---

[13] *Id.* at 7, ¶ 22; at 10, ¶¶ 29–31.

[14] *Id.* at 7, ¶ 23.

[15] *Id.* at 8, ¶ 26.

[16] *Id.* at 11–13, ¶¶ 32–35.

[17] *Id.* at 8, ¶ 23.

[18] *Id.* at 13, ¶ 36.

[19] *Id.* at 15, ¶ 38.

[20] *Id.* at 13–14, ¶ 36.

[21] *Id.* at 17, ¶ 41.

[22] Dkt. 49 at 2, ¶ 4; 18, ¶ 43. The Second Amended Complaint fails to provide specific dates or examples of Franke reporting or raising concerns regarding the fraudulent billing practices either internally or externally.

### B. *Procedural History*

On August 29, 2016, Plaintiffs initiated this action against ANTHC as a *qui tam* lawsuit on behalf of the government and under seal pursuant to the False Claims Act ("FCA").[23] On December 6, 2017, the United States declined to intervene in the action.[24] On June 21, 2018, Plaintiffs filed an Amended Complaint as a private action on behalf of themselves against ANTHC.[25] On December 3, 2018,[26] Plaintiffs filed the Second Amended Complaint ("SAC"), adding the Individual Defendants pursuant to federal question jurisdiction.[27] Plaintiffs allege that their employment at ANTHC was terminated as a result of Plaintiffs' opposition to ANTHC's fraudulent billing practices in violation of federal and state laws.

### III.    LEGAL STANDARD

Defendants move to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(1) based on tribal sovereign immunity and 12(b)(6) based on a failure to state a claim upon which relief can be granted.

### A. *Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)*

The issue of tribal sovereign immunity is quasi-jurisdictional. When properly raised in a 12(b)(1) motion, a district court is not bound to accept a plaintiff's allegations as true in resolving

---

[23] Dkt. 1 (Compl.); 31 U.S.C. § 3729 *et seq*.

[24] Dkt. 12 (Notice of United States Election to Decline to Intervene).

[25] Dkt. 15 (Am. Compl.).

[26] Dkt. 49.

[27] 28 U.S.C. § 1331.

that issue,[28] nor is it bound by the four corners of the complaint; however, a Court may consider additional materials in resolving a 12(b)(1) motion.[29] Furthermore, once a party raises this defense, "'the party asserting subject matter jurisdiction has the burden of proving its existence,' i.e. that immunity does not bar the suit."[30]

### B. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a claim for lacking a factual basis "upon which relief can be granted."[31] Under the "facial plausibility" pleading standard set forth by the Supreme Court in *Ashcroft v. Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[32] A district court must accept as true the material factual allegations contained in the complaint, draw all reasonable inferences in favor of the non-moving party, and only consider the allegations contained in the complaint without looking beyond its four corners.[33]

## IV.    ANALYSIS

Plaintiffs assert the following four claims: (Count I) Defendants violated the FCA by terminating Plaintiffs' employment in retaliation for raising concerns about ANTHC and ANMC's

---

[28] *See, e.g.*, *Pistor v. Garcia*, 791 F.3d 1104, 1112 (9th Cir. 2015); *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).

[29] *Pistor*, 791 F.3d at 1112 ("the declarations presented evidence going to the question of quasi-jurisdiction, and the district court was not bound to consider only the face of the complaint.").

[30] *Id.* (quoting *Miller v. Wright*, 705 F.3d 919, 927–28 (9th Cir. 2013)).

[31] Dkt. 51 (Mot. to Dismiss MOL) at 6–12.

[32] 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[33] *Rouse v. U.S. Dep't of State*, 567 F.3d 408, 411 (9th Cir. 2009) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)); Fed. R. Civ. P. 12(d).

fraudulent billing practices; (Count II) ANTHC wrongfully terminated Plaintiffs' employment in violation of Alaska's public policy to prevent Medicaid fraud in Alaska; (Count III) ANTHC breached the covenant of good faith and fair dealing under Alaska state law when it terminated Plaintiffs without cause; and (Count IV) ANTHC is vicariously liable for the acts of its employees.[34]

### A. Motion to Dismiss

Defendants move for dismissal of each of Plaintiffs' four claims.[35] ANTHC contends that dismissal is appropriate because ANTHC is an "arm of the tribe," which means it is both entitled to tribal sovereign immunity, which bars all claims against it, and is not "a person" subject to liability under the FCA retaliation provision. The Individual Defendants also contend that dismissal is appropriate because they do not have an employment, contractual or agency relationship with the Plaintiffs. The Court addresses each of these arguments.

### 1. Whether ANTHC is "An Arm of the Tribe"

The quasi-jurisdictional nature of sovereign immunity means that if ANTHC is found to maintain such immunity, this Court lacks jurisdiction to resolve this action as it pertains to ANTHC.[36] "Tribal sovereign immunity protects Indian tribes from suit absent express authorization by Congress or clear waiver by the tribe."[37] Tribal sovereign immunity extends to

---

[34] Dkt. 49 at 18–22.

[35] Dkt. 50.

[36] *Pistor*, 791 F.3d at 1111 (rejecting the district court's conclusion, and holding "[t]o the contrary, as the tribal defendants invoked sovereign immunity in an appropriate manner and at an appropriate stage, i.e. in a Rule 12(b)(1) motion to dismiss, if they were entitled to tribal immunity from suit, the district court would lack jurisdiction over the claims against them and would be required to dismiss them from the litigation.").

[37] *Id.* at 1110 (citing *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008)).

tribal governing bodies or entities acting as "an arm of the tribe"[38] as well as organizations comprised of multiple tribes.[39]

In *White v. University of California*,[40] the Ninth Circuit Court of Appeals set forth the appropriate analysis to determine whether an entity is an "arm of the tribe." If a Court finds that an entity is an "arm of the tribe," that entity is both (1) entitled to maintain tribal sovereign immunity, and (2) is not liable under the FCA retaliation provision, because it is not "a person" under the FCA.[41] *White*, established a five-factor analysis to determine if an entity is an "arm of the tribe:"

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities.[42]

The Court therefore considers whether ANTHC is an "arm of the tribe" under the five-factor analysis articulated in *White*.

### a. Method of Creation of ANTHC

Plaintiffs argue that ANTHC is not an "arm of the tribe" because it was created by Congress, not directly by resolution of the tribes; and tribal status is not required in order to obtain

---

[38] *Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725 (9th Cir. 2008); *see Alaska Logistics, LLC v. Newtok Vill. Council*, 357 F. Supp. 3d 916, 924 (D. Alaska 2019).

[39] *See White v. Univ. of California*, 765 F.3d 1010, 1018 (9th Cir. 2014).

[40] 765 F.3d 1010 (9th Cir. 2014).

[41] *United States ex rel. Cain v. Salish Kootenai College, Inc.*, 862 F.3d 939, 941 (9th Cir. 2017) ("*Cain II*") (acknowledging that these two questions are linked and remanding to the district court to make fact findings as to the *White* factors).

[42] *White*, 765 F.3d at 1025.

federal funding through the Indian Self-Determination and Education Assistance Act ("ISDEAA").[43] Defendants assert that the ISDEAA supports tribal sovereign immunity by giving it the "same 'rights and responsibilities' of any tribe."[44] During oral argument, Defendants further highlighted that ANTHC was authorized by Congress and formed by the tribes because they needed an organization above the regional level to manage statewide health services in Alaska.

ANTHC was authorized by federal law and formed by thirteen Alaska Native regional health entities as a tribal organization and Inter-Tribal Consortia under authority of Alaska Native tribes.[45] In § 325 of Public Law 105-83, Congress authorized the following tribes and Alaska Native health entities to join together "without further resolution" to form ANTHC to provide comprehensive healthcare to the Alaska Native people: the Aleutian/Pribilof Islands Association, Inc., Bristol Bay Area Health Corporation, Chugachmiut, Copper River Native Association, Kodiak Area Native Area Association, Maniilaq Association, Metlakatla Indian Community, Arctic Slope Native Association, Ltd., Norton Sound Health Corporation, Southcentral Foundation, Southeast Alaska Regional Health Consortium, Tanana Chiefs Conference, Inc., and Yukon- Kuskokwim Health Corporation.[46] The ISDEAA, in pertinent part, determines that an "inter-tribal consortium . . . shall have the rights and responsibilities of the authorizing Indian

---

[43] Dkt. 73 at 14–15.

[44] Dkt. 51 at 20–22.

[45] Section 325(a) P. L. 105-83 (1997) ("without further resolutions from the Regional Corporations, Village Corporations, Indian Reorganization Act Councils, tribes and/or villages which they represent are authorized to form a consortium…"); Dkt. 52-2 (Helgesen Aff., Ex. 2, Alaska Tribal Health Compact) at 7.

[46] Section 325(a) P. L. 105-83 (1997). During oral argument, Plaintiffs argued at length that the tribes must provide a specific resolution in order to authorize and to confer tribal sovereign immunity upon ANTHC. However, § 325 specifically obviates the need for tribe level resolutions by stating "without further resolution" from various tribal authorities.

tribe and § 325(a) authorizes the fifteen tribes and tribal health organizations to form "a consortium," which eventually became ANTHC.[47] Furthermore, ANTHC was incorporated as a tribal non-profit organization.[48]

Based on these facts, the Court finds that ANTHC's creation, authorized by Congress and formed by regional health entities and tribes, supports a finding that it is "an arm of the tribe."

### b. ANTHC's Purpose

Defendants assert that because ANTHC "exists to 'assure that all Alaska Natives have access to a comprehensive, integrated, and tribally-controlled health care delivery system;'" and because ANTHC carries out ISDEAA functions, these facts support its tribal sovereign immunity.[49] Plaintiffs implicitly agree that this factor weighs in favor of a finding that ANTHC is "an arm of the tribe" by failing to make an argument to the contrary.

ANTHC serves a government function using federal funds from the Indian Health Service ("IHS") under the Department of Health and Human Services ("HHS") to "provide[] a wide range of medical, community health and other services for more than 175,000 Alaska Natives across the State."[50] Only Alaska Natives and American Indians are eligible to receive direct health services

---

[47] 25 U.S.C. § 5381(b); *see* § 325(a) P. L. 105-83 (1997).

[48] ANTHC Overview, https://anthc.org/who-we-are/overview/ (June 7, 2019). *See also Cain v. Salish Kootenai College, Inc.*, No. CV-12-181-M-BMM, 2018 WL 2272792 at *1–2 (D. Mont. May 17, 2018) ("*Cain III*") (finding that dual incorporation as tribal non-profit and under state law did not undermine defendant's status as "arm of the tribe").

[49] Dkt. 51 at 22–23 (asserting that the Alaska State courts agree).

[50] Dkt. 52 at 3, ¶ 5; *see* Dkt. 52 at 2, ¶ 3.

from ANMC.[51] ANTHC supplants the government by providing statewide healthcare services that "were formerly provided by [IHS]."[52] ANTHC was also established "for the purpose of entering into self-determination and self-governance agreements with the [IHS] to operate and manage health services as authorized by Section 325 [of Public Law 105-83.]"[53] Like the Repatriation Committee at issue in *White*, as a member of the ATHC, ANTHC furthers "tribal self-determination and self-governance," which are central policies underlying the doctrine of tribal sovereign immunity.[54]

Based on the foregoing, the Court finds that ANTHC's purpose and function support a finding that it is "an arm of the tribe."

### c. *ANTHC's Structure, Ownership, and Management*

Plaintiffs assert ANTHC is nothing "more than a mere business" because ANTHC lacks tribes as members and the Board of Directors operates independently; thus, ANTHC is not entitled

---

[51] ANMC Policy 703F, http://anmc.org/files/703F-Eligibility-for-Direct-Health-Services-at-ANMC.pdf. *See also Cain III*, 2018 WL 22727792, at *2 (finding that the native student enrollment supported defendant's status as an "arm of the tribe").

[52] Dkt. 52 at 3, ¶ 5; *see* § 325(a) P. L. 105-83 (1997) (authorizes the tribes and regional health entities "to enter into contracts, compacts, or funding agreements under Public Law 93-638 . . . to provide all statewide health services provided by the Indian Health Service of the Department of Health and Human Services through the Alaska Native Medical Center and the Alaska Area Office.").

[53] Dkt. 51-5 (Mot. to Dismiss MOL, Ex. D) at 1. ANTHC is a "Co-Signer" to the Alaska Tribal Health Compact ("ATHC") by which ANTHC is authorized "to plan, conduct, and administer those programs and services to meet the health care needs of the Alaska Native Tribes." Dkt. 52-2, Ex. 2 at 10. The ATHC is an "instrument through which all Alaska Native tribes and tribal organizations could collectively enter into a single-self-governance agreement with the [IHS.]" Dkt. 51-5, Ex. D at 1.

[54] Dkt. 52-2, Ex. 2 at 7–8. *See also White,* 765 F.3d 1010.

to sovereign immunity.[55] Defendants point to the representatives on the Board of Directors as the mechanism in which the tribes control ANTHC.[56]

As a Co-Signer to the ATHC, ANTHC participates in carrying out "the unique tribal cooperation that has developed in Alaska to assure that all Alaska Natives have access to a comprehensive, integrated, and tribally-controlled health care delivery system."[57] ANTHC is "governed by a 15-member Board of Directors."[58] Twelve directors are selected by each of the "regional Alaska Native tribal health consortia; one director is appointed by the Metlakatla India Community, a federally-recognized tribe;" and two directors are elected by Alaska Native tribes who are unaffiliated with a regional health consortium.[59] The tribes and tribal organizations that formed ANTHC exercise control of ANTHC through their representative to the Board of Directors; each representative has voting power.[60] The tribes are in control of their representative and can

---

[55] Dkt. 73 at 16–19 (quoting *Pink v. Modoc Indian Health Project, Inc.* 157 F.3d 1185 (9th Cir. 1998)). The Court notes that the parties disagreed as to the significance of *Pink v. Modoc Indian Health Project* during oral argument.

[56] Dkt. 51 at 22.

[57] Dkt. 52-2, Ex. 2 at 4; *see also* Dkt. 52-2, Ex. 2 at 7 (defining "Co-Signer" as "all Tribes and tribal organizations or Inter-Tribal Consortia, including the ANTHC, participating in the Compact").

[58] Dkt. 52 at 4.

[59] *Id.*

[60] *See* ISDEAA, 25 U.S.C. § 5381(b); § 325(a) P. L. 105-83 (1997); Dkt. 52-2, Ex. 2 at 7. *See also McCoy v. Salish Kootenai College, Inc.,* 334 F. Supp. 3d 1116, 1123 (D. Mont. 2018) (finding that "the College's Board of Directors handles the governing day-to-day operations" did not undermine a conclusion that the College was an arm of the tribe); *Cain III*, 2018 WL 2272792, at *2 (finding that a delegated board although separate from the tribes themselves did not undermine a conclusion that defendant was "an arm of the tribe").

replace that person if the tribe so desires.[61]

Based on these facts, the Court finds that ANTHC's management structure supports a finding that it is "an arm of the tribe."

### d. The Tribes' Intent to Share Sovereign Immunity with ANTHC

Plaintiffs argue that ANTHC is not an "arm of the tribe" because it did not sign an explicit resolution conferring sovereign immunity,[62] is not a "Tribal Co-Signor" to the ATHC, or on a "government to government basis."[63] Defendants argue that ANTHC's tribal authorization through ATHC and ISDEAA evidences that the tribes intended to share their sovereign immunity with ANTHC, and is thus "an arm of the tribe."[64]

Pursuant to ISDEAA, when "an Indian tribe has authorized . . . an inter-tribal consortium . . . to plan for or carry out programs, services, functions or activities . . . on its behalf . . . [the] inter-tribal consortium . . . shall have the rights and responsibilities of the authorizing Indian tribe,"[65] which includes sovereign immunity. ANTHC, an "inter-tribal consortium," was created without any showing to the contrary; therefore, the tribes and regional health entities identified in § 325(a) showed their intent to share sovereign immunity.[66] In fact, when the tribal representatives on the ANTHC board do not wish to share their sovereign

---

[61] Dkt. 52-1 (Helgesen Aff., Ex.1, ANTHC Bylaws) at 4.

[62] Plaintiffs raised this argument during oral argument.

[63] Dkt. 73 at 14–15.

[64] Dkt. 51 at 23.

[65] 25 U.S.C. § 5381(b), ISDEAA (defining "Indian tribe").

[66] *See Cain III*, 2018 WL 2272792, at *3 (finding that the tribe's creation of the College also supported a showing of its intent to share sovereign immunity).

immunity, the tribes explicitly state their intent to waive sovereign immunity.[67] By its own terms, § 325(a) authorized the consortium "without further resolution by the . . . tribes" and Congress obviated any need for an explicit resolution by each tribe to form ANTHC and confer sovereign immunity by resolution.[68] That ANTHC's Articles of Incorporation do not explicitly state that it has sovereign immunity, is not fatal to ANTHC's sovereignty status either.[69]

Based on the foregoing, the Court finds that the tribes and regional health entities identified in §325(a) P.L. 105-83 intend to share their immunity with ANTHC, which supports a finding that ANTHC is "an arm of the tribe."

### e. Financial Relationship Between the Tribes and ANTHC

Plaintiffs assert that ANTHC's financial relationship with the tribes does not support a finding that ANTHC is "an arm of a tribe" because ANTHC makes no promise to return funding to the tribes despite its receipt of non-governmental funds.[70] Defendants point to the government's transfer of "essentially all of IHS's Alaska programs, funding, facilities, equipment, and other resources through the [ATHC] and related funding agreements" and ANTHC's participation in

---

[67] *See, e.g., Southcentral Foundation v. Alaska Native Tribal Health Consortium*, Case No. 3:17-cv-00018-TMB, Dkt. 125 (ANTHC is "an inter-tribal consortium formed by federally-recognized tribes, tribally controlled P.L. 93-638 tribal organizations and inter-tribal consortia . . . Whereas, the Consortium shares in the sovereign immunity of its participating tribes, tribal organizations and inter-tribal consortia . . . the Board of Directors hereby waives the Consortium's sovereign immunity for the sole and limited purpose of seeking a decision from the United States District Court for the District of Alaska in *Southcentral Foundation v. Alaska Native Tribal Health Consortium,* 3:17-cv-00018-TMB.").

[68] Section 325(a) P. L. 105-83 (1997).

[69] *McCoy,* 334 F. Supp. 3d at 1123 (rejecting Plaintiff's argument that the silence of the articles of incorporation undermined defendant's status as "an arm of the tribe").

[70] Dkt. 73 at 16–19.

ATHC to support a showing that ANTHC is "an arm of the tribe."[71]

ANTHC is funded by IHS under HHS and authorized to receive those funds "to provide all statewide health services provided by the Indian Health Service of the Department of Health and Human Services through the Alaska Native Medical Center and the Alaska Area Office."[72] ANTHC is the coordinated organization by which the tribes supplanted this governmental service, relying on "tribal shares" authorized under ISDEAA for the benefit of the Alaska Native people.[73] That ANTHC is a non-profit organization, as opposed to a for-profit organization, does not undermine its status as "an arm of the tribe."[74]

Thus, based on these facts, this Court finds that ANTHC's financial relationship with the tribes weighs in favor of a finding that it is "an arm of the tribe."

For the foregoing reasons, this Court finds that an analysis of the five factors articulated in *White* demonstrates that ANTHC is an "arm of the tribe." Because ANTHC is an "arm of the tribe," it maintains tribal sovereign immunity, which deprives this Court of subject matter jurisdiction over the claims brought against ANTHC and simultaneously establishes that ANTHC is not a "person" subject to the FCA. Accordingly, Defendants' Motion to Dismiss is **GRANTED** with respect to the FCA claim against ANTHC identified in Count I, which is **DISMISSED WITH PREJUDICE**.

---

[71] Dkt. 51 at 21.

[72] § 325(a) P.L. 105-83 (1997).

[73] Defendants asserted this during oral argument on June 12, 2019; s*ee* 25 U.S.C. §5381(a)(8) (ISDEAA defining tribal share "the tribal share means an Indian tribe's portion of all funds and resources that support secretarial programs, services, functions and activities (or portions thereof) that are not required by the Secretary for performance of inherent Federal functions.").

[74] *See McCoy*, 334 F. Supp. at 1123–24.

## 2.   Tribal Sovereign Immunity Bars Tort and Contract Claims Against ANTHC

Having determined that ANTHC is an "arm of the tribe" entitled to tribal sovereign immunity,[75] this Court now addresses the state law claims brought against ANTHC.[76]

In Count II, Plaintiffs contend that they "made good faith reports of improper acts and compliance issues," and that by terminating Wilson's employment and by "fail[ing] to extend or continue Franke's contract,"[77] ANTHC committed the tort of wrongful termination in violation a public policy of the State of Alaska.[78] In additional to tribal sovereign immunity,[79] Defendants argue that its employees are deemed to be part of HHS when carrying out the ATHC's governmental function and Plaintiffs' tort claims must be treated as claims against the United States for which the Federal Tort Claims Act ("FTCA") provides an exclusive remedy.[80] Defendants also assert that Plaintiffs' tort claim fails because Plaintiffs do not identify a particular public policy recognized under Alaska law.[81] In opposition, Plaintiffs reject both ANTHC's claim of tribal sovereign immunity, and its assertion that the FTCA provides an exclusive remedy in this case. Plaintiffs further assert that ANTHC's actions violated the "strong public policy of preventing Medicaid fraud in Alaska."[82]

---

[75] *See supra* IV(A)(1).

[76] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

[77] Dkt. 49 at 19, ¶¶ 46–47.

[78] Dkt. 49 at 18, ¶ 44; at 19–20, ¶ 50.

[79] Dkt. 51 at 19–24.

[80] *Id.* at 18–19.

[81] *Id.* at 17–19.

[82] Dkt. 73 at 25.

Finally, in Count III, Plaintiffs allege that ANTHC breached the covenant of good faith and fair dealing implied in all employment relationships in Alaska by "terminat[ing] Wilson and Franke without cause and in retaliation [for] report[ing] violations of state and federal law."[83] Defendants assert that this Court lacks subject matter jurisdiction over this claim as a result of ANTHC's tribal sovereign immunity.[84]

As discussed, the Court determined—relying on the *White* factors—that ANTHC is entitled to tribal sovereign immunity.[85] As a result, the Court lacks subject matter jurisdiction over the remaining claims against ANTHC.

Accordingly, Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) is **GRANTED** with respect to the claim of wrongful termination identified as Count II, and with respect to the breach of contract claim identified as Count III, and these claims are **DISMISSED WITHOUT PREJUDICE**.

### 3. FCA Retaliation Claim Against Individual Defendants

In Count I, Plaintiffs allege that the Individual Defendants retaliated against them in violation of the FCA, by terminating Wilson's employment and "fail[ing] to extend or continue Franke's contract,"[86] after the Plaintiffs "made good faith reports of improper acts and compliance issues."[87] Defendants respond that FCA retaliation claims can only be maintained against "employers," not individual persons, and, thus, Teuber and Helgesen cannot be liable for any

---

[83] Dkt. 49 at 20, ¶ 53; *see* Dkt. 49 at 20, ¶¶ 52–54.

[84] Dkt. 51 at 19–24.

[85] *See supra* IV(A)(1).

[86] *Id.* at 19, ¶¶ 46–47.

[87] Dkt. 49 at 18, ¶ 44.

alleged retaliation.[88]

The viability of the FCA claim against the Individual Defendants turns on whether Teuber and Helgesen are Plaintiffs' employer under the FCA, or are an entity with whom Plaintiffs have a contractor or agency relationship. Although the Ninth Circuit Court of Appeals has not addressed this question, this Court treats as persuasive out of circuit authority, which provides ample support for the conclusion that the FCA's retaliation provision does not impose liability on individuals unless they have an "employment," "contractor," or "agency" relationship with a plaintiff.[89] It is undisputed that ANTHC—not Helgesen or Teuber—employed Wilson and contracted with Franke. [90] Thus, under this authority, a claim cannot be maintained against the Individual Defendants.

The legislative history of recent amendments to the FCA provides additional support for this conclusion. Prior to the 2009 amendments, the FCA prohibited retaliation against an employee

---

[88] Dkt. 51 at 7–11.

[89] *See e.g.*, *Howell v. Town of Ball*, 827 F.3d 515 (5th Cir. 2016) (affirming the district court's dismissal of FCA retaliation claim against individual defendants and rejecting Plaintiff's argument that by removing the word "employer" in 2009, Congress intended "to broaden the class of viable defendants"); *Quality Assurance Servs., Inc.,* 242 F. Supp. at 1029 (dismissing retaliation claim against individual defendants without leave to amend); *United States v. Kiewit Pac. Co*., 41 F. Supp. 3d 796, 814 (N.D. Cal. 2014) (dismissing retaliation claim against individual defendants without leave to amend); *Cain IV*, 2019 WL 1643634, at *8–9 (dismissing the FCA retaliation claim against individual defendants because they are not plaintiffs' "employer"); *United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr., Inc.,* No. CV 14-08850-JFW (EX), 2017 WL 8793222, at *8-9 (C.D. Cal. Dec. 29, 2017) (dismissing FCA retaliation claims against non-employers including individual defendants without leave to amend); *United States v. N. Am. Health Care, Inc.,* No. 14-CV-02401-WHO, 2015 WL 6871781 at *8 (N.D. Cal. Nov. 9, 2015) (dismissing retaliation claim against individual defendant with prejudice); *Marsteller v. MD Helicopter Inc*., No. CV-14-01788-PHX-DLR, 2014 WL 12821103 at *5–6 (D. Ariz. Oct. 15, 2014) (dismissing FCA retaliation claims against non-employers including an individual defendant).

[90] Dkt. 49 at 2, ¶¶ 3–4.

"by his or her employer."[91] The 2009 amendments removed the term "employer" from that section.[92] Defendants argue that, despite this revision, Congress did not express the intent to broaden FCA retaliation liability to all foreseeable defendants.[93] The Court agrees.

Thus, this Court finds that Teuber and Helgesen are not subject to liability under the FCA's retaliation provision because Plaintiffs are not the "employee," "contractor," or "agent"[94] of the Individual Defendants.

Accordingly, Defendants' Motion to Dismiss is **GRANTED** with respect to the FCA retaliation claim against the Individual Defendants identified in Count I, which is **DISMISSED WITH PREJUDICE**.

### B. Cross Motion for Jurisdictional Discovery

In opposing the Motion to Dismiss, Plaintiffs also cross-move for jurisdictional discovery,[95] seeking to establish that "ANTHC is not controlled by the tribes, and is instead an 'independent entity' whose Board members have an 'undivided loyalty to ANTHC that is not subordinate to any duty owed to . . . any other entity.'"[96] During oral argument, Plaintiffs

---

[91] Section 4 P.L. 111-21 (May 20, 2009) ("Clarification of the False Claims Act").

[92] *Id.*

[93] Dkt. 51 at 7–11; accord *Cain v. Salish Kootenai College, Inc.*, No. 12-181-N-BMM, 2019 WL 1643634, at *8 (D. Mont. April 16, 2019) ("*Cain IV*"); *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1029 (S.D. Cal. 2017).

[94] The appropriate defendant for Plaintiffs' FCA retaliation claim is Plaintiffs' former employer, ANTHC. However, as discussed in Section IV(A)(1) of this Order, ANTHC's status as "an arm of the tribe" renders ANTHC immune from this claim.

[95] In moving for jurisdictional discovery Plaintiffs failed to identify any authority in which to ground their motion.

[96] Dkt. 74 at 26–27; *see* Dkt. 81 (Pls.' Reply in Supp. of Disc. Mot.).

identified the following categories of documents that they seek: (1) documents to or from the designated entities that discuss tribal governance and sovereign immunity; (2) service agreements between ANTHC and the designated entities; and (3) documents showing revenue generating dealings with designated entities. Additionally, Plaintiffs seek to take depositions under Fed. R. Civ. P. 30, in part, to evaluate how ANTHC decides whether to waive sovereign immunity, and to support Plaintiffs' arguments that ANTHC is not "an arm of the tribe" but "a mere business."[97] Defendants contended during oral argument that Plaintiffs' identified categories of documents and request for depositions are broad and vague, and that Plaintiffs fail to make a compelling showing that such discovery is needed; thus, Defendants contend that Plaintiffs do nothing to justify "a fishing expedition."[98]

Courts are afforded broad discretion in allowing discovery and may appropriately do so when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."[99] "[I]t is clear that a court may allow discovery to aid in determining whether it has . . . subject matter jurisdiction."[100] In particular, "a narrowly tailored request for jurisdictional discovery" may be appropriate.[101] However, a court may fairly

---

[97] Defendants announced their specific request to take depositions during oral argument on June 12, 2019.

[98] *See* Dkt. 78 (Opp'n to Disc. Mot) at 2.

[99] *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)).

[100] *Alaska Logistics, LLC v. Newtok Vill. Council*, 357 F. Supp. 3d 916, 924 (D. Alaska 2019) (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

[101] *Intercontinental Indus. Corp. v. Wuhan State Owned Indus. Holdings Co.*, 619 F. App'x 592, 595 (9th Cir. 2015), as amended on clarification (Aug. 19, 2015) (citing Am. W. Airlines, Inc. v. GPA Grp., Ltd., 877 F.2d 793, 801 (9th Cir. 1989)).

deny a discovery request where it determines "'it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.'"[102] Furthermore, "the burden is greater where, as in the present case, 'the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery.'"[103]

Plaintiffs have not met their burden. Plaintiffs fail to make a narrowly tailored request; their broad request for documents and depositions is insufficient to justify jurisdictional discovery because Plaintiffs fail to identify any relevant facts in dispute, or how more information would alter the Court's jurisdictional analysis.[104] Plaintiffs also have not identified any authority on which to justify their broad request for discovery.[105] The record contains sufficient factual evidence on which to evaluate Defendants' Motion to Dismiss, and in particular, the jurisdictional questions presented therein.[106]

Accordingly, Plaintiffs' Cross-motion for Jurisdictional Discovery at docket 74 is **DENIED**.

---

[102] *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989).

[103] *Davila v. United States,* 713 F.3d 248, 264 (5th Cir. 2013) (quotation omitted).

[104] Plaintiffs' attempt to incorporate hundreds of pages of filings from *Southcentral Foundation v. Alaska Native Tribal Health Consortium*, Case No. 3:17-cv-00018-TMB, is unavailing.

[105] Furthermore, Plaintiffs' failure to direct to this Court to any authority which requires a tribal resolution to confer tribal sovereign immunity to ANTHC, demonstrates that whether such a resolution exists is not material to the tribal sovereign immunity analysis.

[106] *See supra* IV(A).

*C. Motion to Disqualify*

Based on the determination above that ANTHC is "an arm of the tribe" and maintains tribal sovereign immunity,[107] the Court lacks subject matter jurisdiction over claims brought against ANTHC, and all such claims have been dismissed pursuant to Fed. R. Civ. P. 12(b)(1). The Court has also dismissed Plaintiffs' claims against the Individual Defendants for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Accordingly, because all of Plaintiffs' claims in the SAC have been dismissed, Defendants' Motion to Disqualify at docket 32 is **DENIED AS MOOT**.

## V.     CONCLUSION

For the foregoing reasons, the Court **HEREBY ORDERS** as follows:

1. The Motion to Dismiss at docket 50 is **GRANTED**;

    a. Count I of the SAC is **DISMISSED WITH PREJUDICE**;

    b. Counts II, III and IV of the SAC are **DISMISSED WITHOUT PREJUDICE**;

2. The Discovery Motion at docket 74 is **DENIED**;

3. The Motion to Disqualify at docket 32 is **DENIED AS MOOT**; and

4. The Clerk of the Court is directed to close this case.


IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 3rd day of July, 2019.

*/s/ Timothy M. Burgess*
TIMOTHY M. BURGESS
 UNITED STATES DISTRICT JUDGE

---

[107] *See supra* IV(A)(1).